UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KIM MARIE NADEAU,**

       **Plaintiff,**

**v.**                                                                               Case No: 6:16-cv-800-Orl-41DCI

**COMMISSIONER OF SOCIAL
SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION

Kim Marie Nadeau (Claimant) appeals to the District Court from a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits, supplemental security income benefits, and widow's insurance benefits. Doc. 1; R. 1-4, 264-75. Claimant argued that the Administrative Law Judge (the ALJ) erred by: 1) "failing to adequately consider and weigh the opinions of the claimant's treating physicians and providing more weight to a non-examining physician than any examining physician"; 2) posing a hypothetical to the Vocational Expert that did not accurately reflect Claimant's limitations; and 3) "failing to adequately assess the claimant's credibility." Doc. 20 at 2-3. For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

### I.    THE ALJ'S DECISION

In August 2012, Claimant filed applications for disability insurance benefits, supplemental security income benefits, and widow's insurance benefits. R. 264-75. Claimant alleged a disability onset date of April 2, 2009. R. 26, 264, 266, 275.

The ALJ issued his decision on June 26, 2014. R. 25-43. In his decision, the ALJ found that Claimant had the following severe impairments: generalized osteoarthritis, degenerative disc disease of the lumbar and cervical spine, fibromyalgia, migraine headaches, a history of non-insulin-dependent diabetes mellitus, a history of mitral valve prolapse, possible bursitis of the right shoulder, depression, and anxiety. R. 29. The ALJ found that Claimant had a residual functional capacity (RFC) to perform less than a full range of light work as defined by 20 C.F.R. § 404.1567(b) and 416.967(b).[1] R. 26. Specifically, the ALJ found as follows:

> [C]laimant has the residual functional capacity to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). Specifically she has the ability to lift/carry and push/pull 20 pounds occasionally, and 10 pounds frequently; sit for four hours at a time and a total of eight hours during an eight hour day, and stand and/or walk for two hours at a time and a total of six hours during an eight hour day. While she is precluded from climbing ropes, ladders and scaffolds, she can perform occasional climbing of stairs and ramps and occasional balancing, stooping, kneeling, crouching and crawling. She is precluded from more than frequent overhead reaching with the right dominant upper extremity but has no other limitations regarding manipulation, vision or communication. She has no environmental limitations. Mentally she is precluded from performing complex tasks but is fully capable of performing simple to detailed tasks consistent with semiskilled work with and SVP of three or four, with concentration on those tasks for two-hour periods with normal breaks and a lunch.

R. 31. The ALJ posed a hypothetical question to the vocational expert (VE) that was consistent with the foregoing RFC determination, and the VE testified that Claimant was capable of performing her past relevant work. R. 85-88. The ALJ thus found that Claimant was capable of performing her past relevant work as a sales clerk and cashier. R. 36-38. The ALJ also found,

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b); 416.967(b).

relying on the VE's testimony, that Claimant was capable of performing other jobs in the national economy. *Id.* Therefore, the ALJ found that Claimant was not disabled between the alleged onset date and the date of his decision. R. 38.

## II. STANDARD OF REVIEW

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III. ANALYSIS

**A. Failure to Properly Weigh Opinions and Consider Pertinent Evidence**

At step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining, and non-examining medical sources. 20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

The weighing of treating, examining, and non-examining physicians' opinions is an integral part of steps four and five of the sequential evaluation process. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit stated that "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Id*. at 1178-79 (quoting 20 C.F.R. § 404.1527(a)(2)) (alterations in original). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id* at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is

rational and supported by substantial evidence." *Id*. (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c); 416.927(c). A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

Here, Claimant argued that the ALJ erred by failing to note the weight he assigned to the opinions of Ahmadi B. Zaman, M.D., Claimant's treating physician.[2] Doc. 20 at 13-16. Thereafter, Claimant summarized the medical records of Dr. Zaman. *Id*. But Claimant never identified any opinions in Dr. Zaman's records that purported to limit what Claimant could do

---

[2] To the extent Claimant was arguing that the ALJ failed to consider Dr. Zaman's records, Claimant's argument is without merit. It is apparent from the ALJ's decision that he did consider Dr. Zaman's records. R. 33-34, 516-32, 547-48, 560-70, 589-95.

despite her impairments.³  *Id*.  Nor did Claimant explain or argue how any of Dr. Zaman's purported opinions undermined the ALJ's decision or contradicted the RFC.  *Id*.

After reviewing Dr. Zaman's records, the undersigned finds that they do not contain any medical opinions that purport to limit what Claimant could do despite her impairments.  R. 516-32, 547-48, 560-70, 589-95.  Even to the extent that Dr. Zaman's records contain medical opinions that the ALJ was required to weigh, the undersigned finds that the ALJ's failure to do so was harmless error, as any such purported medical opinions do not directly contradict the ALJ's RFC determination.  *See, e.g.*, *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (similar).

Claimant also argued, generally, that the ALJ erred by failing to indicate the weight he assigned to any opinion in the record other than the opinion of the non-examining state agency physician.  Doc. 20 at 10-13.  However, with regard to this general argument, Claimant did not specifically cite to a physician or purported medical opinion that the ALJ purportedly failed to weigh.  *Id*.  Nor did Claimant explain or argue how the purported failure to weigh the physicians'

---

³ The undersigned notes that Claimant did state that "Dr. Zaman opined that Ms. Nadeau was experiencing Fibromyalgia, and discussed this at length with her."  Doc. 20 at 14.  However, the undersigned does not consider Dr. Zaman's impression that Claimant was suffering from fibromyalgia to be an opinion limiting what Claimant could do despite her impairments.  *See* R. 523.  Moreover, even if the undersigned were to consider Dr. Zaman's impression that Claimant suffered from fibromyalgia to be an opinion, the ALJ's failure to assign weight to this opinion would have been harmless.  *See, e.g.*, *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (similar).  The ALJ explicitly found that Claimant suffered from fibromyalgia. R. 29.

purported medical opinions undermined the ALJ's decision. *Id*. Because Claimant did not specifically argue what purported medical opinions the ALJ failed to weigh and how these opinions undermined the ALJ's decision, the Court finds that Claimant abandoned the argument. *See, e.g.*, *Jacobus v. Comm'r of Soc. Sec.*, No. 15-14609, 2016 WL 6080607, at *3 n.2 (11th Cir. Oct. 18, 2016) (stating that claimant's perfunctory argument was arguably abandoned); *Gombash v. Comm'r of Soc. Sec.*, 566 Fed. App'x. 857, 858 n.1 (11th Cir. 2014) (stating that the issue was not properly presented on appeal where claimant provided no supporting argument); *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Gaskey v. Colvin*, No. 4:12-CV-3833-AKK, 2014 WL 4809410, at *7 (N.D. Ala. Sept. 26, 2014) (refusing to consider claimant's argument when claimant failed to explain how the evidence undermined the ALJ's decision) (citing *Singh v. U.S. Atty. Gen*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal.")).

Regardless, the undersigned has reviewed the medical records and to the extent that the medical records do contain medical opinions, the undersigned finds that they do not directly contradict the ALJ's RFC determination.[4] Therefore, the ALJ's purported failure to weigh any

---

[4] On April 9, 2007, approximately two years prior to Claimant's alleged onset date, Steven E. Weber, D.O. placed Claimant on "[l]ight duty restrictions per the DWC-25." R. 391, 95. Even assuming this was a medical opinion that needed to be weighed, it does not contradict the ALJ's RFC determination, which limited Claimant to less than a full range of light work. R. 31. The undersigned further notes that Claimant presented no argument to suggest that this statement somehow contradicted the RFC.

such purported medical opinions was harmless error. *See, e.g.*, *Wright*, 153 F. App'x at 684; *Caldwell*, 261 F. App'x at 190.

Finally, Claimant argued that the ALJ erred by giving more weight to a non-examining physician than any examining physician. Doc. 20 at 8-10. Claimant, however, did not cite to any case law to support the proposition that it is error per se to assign more weight to the opinion of a non-examining physician than to the opinion of an examining physician. *Id*. Nor did Claimant specify to which examining physicians' purported opinions she was referring; or specifically argue or explain why the examining physicians' purported opinions were entitled to more weight than the state agency physicians' opinions; or argue or explain why it was error for the ALJ to give significant weight to the state agency physicians' opinions. *Id*. Therefore, the undersigned finds that Claimant's argument was raised in a perfunctory manner and that Claimant has waived the argument. *See, e.g.*, *Jacobus*, 2016 WL 6080607, at *3 n.2; *Gombash*, 566 Fed. App'x. at 858 n.1. Regardless, as previously discussed, to the extent the medical records do contain medical opinions, the undersigned finds that any such medical opinions do not directly contradict the ALJ's RFC determination, and thus that any purported error in giving more weight to the non-examining physicians' opinions was harmless. *See, e.g.*, *Wright*, 153 F. App'x at 684; *Caldwell*, 261 F. App'x at 190.

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's first assignment of error.

### B. The ALJ's Credibility Determination

Claimant argued that the ALJ "erred in determining that the claimant has the residual functional capacity to perform work a reduced range of light work with additional non-exertional limitations after failing to adequately assess the claimant's credibility." Doc. 20 at 18.

Specifically, Claimant argued that the ALJ did not articulate sufficient reasoning to support his credibility determination, and that the ALJ's credibility determination was not supported by substantial evidence. *Id.* at 18-20.

The Commissioner argued that substantial evidence supported the ALJ's credibility determination. Doc. 21 at 11-16. Specifically, the Commissioner argued that the ALJ sufficiently explained that Claimant was not entirely credible because Claimant's complaints were inconsistent with the medical records. *Id.* at 13. The Commissioner argued that the objective medical evidence showing normal findings and conservative treatment provides substantial evidence to support the ALJ's credibility assessment. *Id.* The Commissioner also argued that Claimant's daily activities supported the ALJ's credibility assessment. *Id.* at 13-14.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1). In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id.* at §§ 404.1529(c)(1)-(3); 416.929(c)(1)-(3). "If the ALJ

decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *See Foote*, 67 F.3d at 1562.

On April 30, 2014, Claimant appeared before the ALJ for a hearing. R. 45-90. At the hearing, Claimant testified that her biggest source of pain is her neck, that her neck pain gives her migraine headaches, and that her neck affects her shoulders, arms, wrists, and back. R. 62, 64. Claimant also testified that she has limited range of motion in her neck and that her fingers "lock up on [her] some days." R. 62, 67-68. Claimant testified that she would be unable to use her hands on a regular basis for any type of employment because her hands hurt all the time and they "cramp up on" her. R. 74, 83. Claimant testified that sometimes when she wakes up her fingers are cramped and she has to massage them for a while in order to get her fingers to open. R. at 74. Claimant also testified that she suffers from right hip, knee, and ankle pain. R. at 62. Claimant testified that she has panic attacks, does not sleep well, and is claustrophobic and depressed. R. 69. Claimant testified that she was no longer able to be a cashier because her neck would hurt and cause headaches if she had to look down at the register for too long. R. 74. She further testified that she was not able to be a cashier because of her hand limitations. R. 74-75. She testified that she cannot carry more than a couple of pounds and that she sometimes drops a spoon because she cannot get a good grasp on it. R. 78. Claimant testified that in an eight hour day, she can stand and walk for less than an hour and sit for less than thirty minutes before she needs to lie down. R. 76-77.

The ALJ found Claimant's impairments could reasonably be expected to cause her alleged symptoms, but concluded that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible for the reasons explained in this decision." R.

32. Thereafter, the ALJ discussed the medical and opinion evidence, but did not discuss Claimant's testimony regarding her limitations.[5] R. 26-38. The ALJ then stated, in part, the following:

> The objective medical evidence is limited to repeated emergency department visits of short duration and some treatment by primary care physicians, but it is noted that those physicians have not rendered an opinion as to the level of claimant's condition and have not assessed her with any limitations. The claimant has been assessed with degenerative disc disease and cervical disc herniation and received epidural injections but has not required more aggressive treatments as she was prescribed physical therapy only with no finding of surgical lesions. She does carry the diagnosis of fibromyalgia and osteoarthritis but her hypertension is controlled with medications and she has not had significant problems related to her history of mitral valve prolapse.
>
> It is noted that claimant has not required hospitalization or mental health counseling for any of her mental impairments including depression and anxiety. The reported anxiety attacks are not documented to the extent alleged. The objective medical evidence shows nothing more than degenerative disc disease with an old MRI of the cervical spine showing a C5-6 disc herniation without evidence of compression or significant nerve root involvement. Notably she has not required surgery or surgical consult. The consultative examining psychologist assessed the claimant with pain disorder, anxiety and depressive disorder but assessed a Global Assessment of Functioning score of 64 which is indicative of no more than mild mental limitations.
>
> The undersigned found the claimant to have severe mental impairments but not disabling impairments. In addition to limited objective medical evidence, the claimant has numerous activities which are inconsistent with total inability to work. She notably looked for jobs consistent with her past work including sales jobs but had no callbacks. She also testified that she is able to do some household chores including cooking, shopping for groceries on short trips, and going to the supermarket. She is able to take care of her own personal self-care needs including bathing, and brushing her teeth. She also testified that she helps watch over her dad who lives with her and make sure he takes his medications.

R. 35 (internal citations to the record omitted).

---

[5] The undersigned notes that the ALJ did briefly refer to Claimant's testimony regarding her daily activities. R. 35. The undersigned further notes that the ALJ briefly discussed some of Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms that were found in other parts of the record. R. 32.

Although the foregoing may be construed as the ALJ's attempt to articulate his reasons for discrediting Claimant's testimony, it could also simply be the ALJ's discussion of the substantial evidence in support of the RFC determination, which appears in the same section of the ALJ's opinion. Regardless, even to the extent the foregoing can be construed as the ALJ's reasons for discrediting Claimant's testimony, the ALJ's failure to explicitly discuss Claimant's testimony, combined with the general nature of the ALJ's statements,[6] frustrates the undersigned's ability to conduct a meaningful review of the ALJ's decision in regards to the credibility of Claimant during her testimony. For instance, the undersigned is incapable of determining the ALJ's reasons for rejecting Claimant's testimony that her hands hurt all the time, that they would "cramp up" on her, that she sometimes had difficulty grasping a spoon, and that she could not be a cashier because of her hand limitations. The ALJ never discussed the testimony from Claimant concerning her hand limitations, which testimony directly contradicts the ALJ's RFC determination.[7] Thus, because Claimant's testimony concerning her hand limitations was never discussed, the ALJ's opinion did not clearly articulate the ALJ's reasons for rejecting that testimony. In fact, other than mentioning Claimant's allegation of numbness in her hand, there is nothing in the ALJ's decision to indicate that the ALJ considered Claimant's purported hand limitations. R. 26-38. Therefore, the

---

[6] In other words, the ALJ's statements could be read as evidence summarized for a variety of reasons; including evidence directed to the RFC determination, Claimant's credibility, or possibly both. The ALJ certainly could have summarized the evidence in support of the RFC, without reference to or consideration of Claimant's allegations in her testimony concerning the intensity, persistence, and limiting effects of her symptoms. And, if that is the case, the ALJ would have erred. On this record, the undersigned cannot determine what the ALJ actually considered (and for what purpose), and, thus, will not adopt a post hoc interpretation of what the ALJ meant or intended by the statements in the ALJ's opinion.

[7] In his RFC determination, the ALJ specifically found that Claimant "is precluded from more than frequent overhead reaching with the right dominant upper extremity *but has no other limitations regarding manipulation*, vision or communication." R. 31 (emphasis added).

undersigned finds that the ALJ failed to explicitly or implicitly discredit Claimant's testimony. *See generally Foote*, 67 F.3d at 1561-62 (stating that a claimant's testimony can be implicitly discredited if the implication is sufficiently clear as to amount to a specific credibility finding).

Accordingly, it is **RECOMMENDED** that the Court accept Claimant's second assignment of error.

### C. Hypothetical Question to Vocational Expert (VE)

"[T]he ALJ may consider the testimony of a VE in determining whether the claimant still possesses the ability to perform her past relevant work." *Waldrop v. Comm'r of Soc. Sec.*, 379 Fed. App'x. 948, 952 (11th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)). The ALJ is required to pose hypothetical questions that are accurate and that include all of the claimant's functional limitations. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). However, the ALJ need not include "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or medical "findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Where the ALJ relies on the VE's testimony, but fails to include all the claimant's functional limitations in the hypothetical question, the final decision is not supported by substantial evidence. *See Pendley*, 767 F.2d at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).[8]

Here, Claimant argued that the ALJ improperly relied on the testimony of the VE after posing a hypothetical question that did not adequately reflect Claimant's limitations. Doc. 20 at

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

16-18. Claimant's argument was premised upon the fact that the ALJ's RFC determination was not supported by substantial evidence.[9] *Id*. Specifically, Claimant argued that the hypothetical relied on by the ALJ contained none of the limitations outlined by Claimant's "treating physician, since the ALJ failed to even state the weight he assigned to the treating physician." *Id*. at 18. But as the undersigned previously explained, the ALJ did not err in purportedly failing to weigh the treating physician's purported medical opinion.

Accordingly, it is **RECOMMENDED** that the Court reject Claimant's third assignment of error.

## IV. CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court:

1. **REVERSE** and **REMAND** the final decision of the Commissioner for further proceedings; and

2. Direct the Clerk to enter judgment in favor of Claimant and against the Commissioner, and close the case.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

---

[9] Claimant did not argue that the ALJ's RFC determination was inconsistent with the hypothetical the ALJ posed to the VE. Doc. 20 at 16-18.

Recommended in Orlando, Florida on May 2, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy